UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KENNETH FALLON,

    Plaintiff,

v.                                                                                                    2:12-cv-000423

CAROLYN W. COLVIN,[1]
Acting Commissioner of
Social Security Administration,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Kenneth Fallon ("Fallon" or "plaintiff") brought this action under 42 U.S.C. §§ 1383(c)(3) and 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act. The action was referred to a United States Magistrate Judge for a Report and Recommendation pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the decision of the Commissioner be affirmed.

## I. PROCEDURAL BACKGROUND

Plaintiff filed for DIB on April 24, 2009 and for SSI on July 6, 2009. (R. 103-04, 123-

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

29). Both applications alleged disability since April 24, 2004, due to neck and back injury, severe shakes and migraines. (R. 103, 123, 153). The Commissioner denied his application initially and upon reconsideration. (R. 65-79, 80-86).On August 17, 2009, Fallon made a timely request for a hearing before an administrative law judge ("ALJ") (R. 95-96). During a hearing held on May 11, 2010, plaintiff amended his alleged disability onset date to May 1, 2009. (R. 35, 40).

On June 16, 2010, Administrative Law Judge O. Price Dodson found plaintiff was not disabled within the meaning of the Social Security Act, and denied his claim for DIB and SSI. (R. 17-27). Fallon requested review by the Appeals Council, and offered additional medical evidence to support his request. (R. 14-16, 305-311). His request for review was denied on April 18, 2012 (R. 4-6), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff filed a subsequent SSI application on July 9, 2010 and in a later decision, ALJ Quigley found plaintiff disabled for the period beginning on June 17, 2010.

Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), Fallon filed this action seeking judicial review of the Commissioner's final decision on his denied claim. This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Fallon was born on May 1, 1959 and was fifty years old at the time of the alleged onset of disability, and was therefore considered to be an individual "closely approaching advanced age" pursuant to 20 C.F.R. §§ 404.1563(d) and 416.963(d). (R. 26). He has a high school education. (R. 39, 113, 156). Previous to his work limitations, plaintiff was a volunteer firefighter and had past work experience as a maintenance worker and as a building/warehouse worker. (R. 40-4, 48, 108, 153, 159). Plaintiff worked full time until April 24, 2004, when he was laid off from his

job. (R. 153).

Fallon's impairments primarily relate to a 1995 automobile accident. On April 11, 1995, Fallon was involved in a head-on motor vehicle collision, which resulted in injury to his neck, back, left shoulder blade and left knee. (R. 219-267). Less than a year later, he was diagnosed with permanent cervicalgia and cervical disc syndrome by Charles G. Nicola, D.C.. (R. 240-41).

Despite the severity of his accident, the record does not show that Fallon was in treatment for his impairments from mid-1995 to his first consultative exam with a Social Security examiner in 2009. In fact, Fallon himself states that he had not seen a physician for over five years prior to mid-2009. (R. 271).

On May 27, 2009, at Social Security's request, plaintiff attended a consultative exam with Jack Lowdon, M.D. for an x-ray examination of his back and neck. Upon examination of the x-rays, Dr. Lowdon noted plaintiff's unremarkable cervical and lumbar spine series, intact vertebrae, and well preserved disc spaces. Id.

On June 10, 2009, also at the request of Social Security, plaintiff attended another consultative exam, with Raymond Iglecia, M.D.. (R. 270-75). At this visit, plaintiff reported that he had constant pain in his neck, shoulders, and back of head, but had not seen a physician for over five years. (R. 270). Plaintiff also reported difficulty with concentrating, prolonged standing, prolonged walking, bending, lifting, and carrying. (R. 271). However, he stated he was able to dress and feed himself; and helped with household chores, such as "sweeping, mopping, vacuuming, cooking, and doing dishes." Id. He stated he was able to stand for approximately twenty minutes at a time, and sit for approximately one hour. Id. Plaintiff further reported he could lift less than ten pounds. Id. Dr. Iglecia noted plaintiff had "shaking in his hands," (R. 270) but that plaintiff was able to ambulate normally, get on and off the exam table,

3

up and out of the chair and removed his socks and shoes; all without difficulty. (R. 272). He was able to perform a normal finger-to-nose test, and exhibited "normal fine motor function and use of both hands." Id. Dr. Iglecia had plaintiff perform range of motion tests and found Fallon had a limitation involving his cervical spine and shoulders at a moderate level, which impeded his able to perform overhead reaching. Id.

On June 22, 2009, Leopold Moreno, M.D., a Social Security physician reviewed the record to assess Fallon's Residual Functional Capacity (RFC). (R. 60). He noted that plaintiff had exertional limitations, and opined plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk approximately six hours in an eight hour workday, and sit for approximately six hours in an eight hour workday. He found plaintiff could push and/or pull when lifting or carrying, restricted only by his previously noted lifting limitations. (R. 60). Dr. Moreno further opined plaintiff could climb stairs and ramps frequently, but never ladders, ropes, and scaffolds, could execute unlimited balance, and frequently could stoop, kneel, crouch, and crawl. (R. 61).

Plaintiff began treatment on July 16, 2009, with his primary care source Nurse Practitioner Lauren M. Gillis at Virginia Beach Family Medical. He reported back and neck pain, headaches, and shaking. Nurse Gillis observed a tremor in plaintiff's hands, decreased arm and grip strength, and lumber tenderness during the examination. (R. 290). Plaintiff was prescribed medication for the pain and scheduled a return visit in four weeks. (R. 291). On August 13, 2009, plaintiff again saw Nurse Gillis. He presented with back tenderness and showed limited range of motion of his neck. He was referred to a neurologist for evaluation and management of his cervicalgia and cervical disc syndrome. (R. 288-89).

Upon examination with Nurse Gillis on September 15, 2009, plaintiff said the pain

4

medication was "working well" for his back pain, though he reported pain at night and sleep disruption. (R. 286). On his December, 15, 2009 visit, he complained of neck pain, and was prescribed additional pain medication. (R. 284). On a January 26, 2010 visit with Nurse Gillis, plaintiff reported that the additional pain medication was helping with his pain "a little bit." (R. 282). During this visit, Nurse Gillis completed a medical source statement for the purpose of plaintiff's disability claim and opined that plaintiff had reduced neck range of motion, hand tremors, could never lift more than 10 pounds, could never perform overhead or forward reaching. If he were to work, she stated he would need to take at least three ten minute rest breaks per day. (R. 276-79).

On January 29, 2010, Fallon saw neurologists Victor Hugo Gonzalez Montoya, MD and William S. Corrie, MD at VCU Health System, MCV Hospitals & Physicians in Richmond, VA for his "chronic neck and lower back pain." (R. 300). Upon physical examination, Dr. Gonzalez Montoya found plaintiff's neck to be "supple" and "tender." (R. 301). He found plaintiff had normal strength, with no swelling or deformity. Id. He did note that plaintiff had decreased range of motion due to pain. Id. Dr. Gonzales Montoya also observed a tremor in both of plaintiff's hands, however Dr. Corrie opined it was "not parkinsonian in character." (R. 299-302). Id. Dr. Gonzales Montoya and Dr. Corrie recommended a medication change, including an increase in pain medication and told plaintiff to follow up with his primary physician and to see them again within four to six months. Id.

On March 2, 3010, plaintiff met with Nurse Gillis to discuss his medication changes and back pain. (R. 280). Plaintiff stated the medication change helped "somewhat," but reported no significant changes to his pain. Nurse Gillis prescribed medication for plaintiff's tremors, and recommended a referral to another neurologist for work up to possible Parkinson's disease if the

5

medication did not yield results. (R. 280).

At the hearing before the ALJ on May 11, 2010, Fallon testified that he drove "maybe three times a week," to doctor's appointments or to do errands, but limited driving due to his medications, and his neck and back pain. (R. 39-40). Plaintiff stated he regularly rose at 8 a.m., watched TV, did housework such as vacuuming and dishes, and "sometimes" took naps. (R. 42). He testified he was able to bathe and dress himself. Id. He reported no hobbies, but that he and his girlfriend occasionally went to visit her parents. Id. Plaintiff testified that he had hand tremors, often accompanied by sweating, and sometimes dropped objects. (R. 45-47). He also stated he had difficulty reaching due to pain in his neck and shoulders. Id. Plaintiff testified that his pain was constant, but that pain medication helped "a little bit." (R. 51).

Vocational expert (VE) Edith Edwards testified that she had reviewed the vocational exhibits, and stated that plaintiff possessed transferrable skills from his past work experience to a light exertional level, such as reports and record keeping, and light maintenance work in the fields of propane, plumbing, and electrical. (R. 52).

Evidence submitted after the ALJ rendered his opinion showed a marked decrease in Fallon's abilities to perform light work beginning after June 2010. For example, on October 11, 2010, Fallon met with Natavan Karimova, MD, for a consultative exam regarding his subsequent SSI application. (R. 305-08). After examining him, Dr. Karimova opined that Fallon had the ability to perform only sedentary work. (R. 308). At a January 12, 2011 examination with Nurse Gillis, Fallon was prescribed a walker with a seat. (R. 310-11). This additional evidence was submitted to the Appeals Council for consideration on Fallon's denied applications. (R. 7). On April 18, 2012, the Appeals Council denied Fallon's request for review after considering his objections to the ALJ's decision and the additional evidence on the record, because the

information did not "provide a basis for changing the Administrative Law Judge's decision." (R. 5).

## III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner☐s] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

# IV ANALYSIS

To qualify for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. § 1382(a) and 42 U.S.C. § 1382(b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. § 1381(a) and 42 U.S.C. § 1382(c).

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?
2. Does the individual suffer from a severe impairment or combination of

impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A. ALJ's Decision

In the present case, the ALJ made the following findings under the five part analysis: (1) The ALJ found that Fallon had not engaged in substantial gainful activity since May 1, 2009 (the alleged onset date of disability); (2) Fallon had severe impairments of cervicalgia and tremor; (3) his impairments (or combination of impairments) did not meet one of the listed impairments in Appendix 1; (4) Fallon was unable to perform past relevant work, but had the RFC to perform

the full range of light work, including sedentary work; and (5) considering Fallon's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Fallon could perform. (R. 22-26).

In plaintiff's motion for summary judgment, he alleges that the ALJ erred by not including all of his established non-exertional limitations in his RFC finding, and as a result erroneously relied on the Grid Rules to find him non-disabled. Fallon also argues that because the Commissioner found him to be limited to a sedentary RFC on a subsequent disability application, the Court should remand to permit the ALJ to evaluate whether his onset date should be amended to a point prior to June 16, 2010. The Court will address each of these arguments.

**B.    The ALJ's finding regarding Fallon's non-external limitations is supported by substantial evidence and he correctly relied on the Grid Rules to find Fallon not disabled.**

At step four of the sequential analysis, the ALJ must first determine the claimant's RFC, which is the claimant's maximum ability to work despite his limitations. 20 C.F.R. §§ 404.1545(a) and 416.945(a)(1). The ALJ must consider all of claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2) and 416.945(a)(2). The ALJ then uses the RFC to determine whether the claimant can perform his past relevant work. Id. at § 404.1545(a)(5)(i). The determination of RFC is based on consideration of all relevant medical and other evidence in the record. 20 C.F.R. §§ 404-1545(a)(3) and 416.945(a)(1).

At step five of the sequential evaluation process, the ALJ is required to consider the claimant's RFC, together with his age, education and work experience to determine if the claimant can make an adjustment to other work that exists in the national economy. 20 C.F.R. §§ 404-1520(g), 416.920(g). To make this finding, the ALJ sometimes relies on the Medical-Vocation Guidelines, which uses the above factors to make a determination of whether claimant

is "disabled" or "not disabled." 20 C.F.R. §§ 404.1569 and 416.969; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200(a).

In the present case, the ALJ found that Fallon had the RFC to perform light work, which permitted him to avoid activities that may "unduly aggravate his symptomatology." (R. 23) The ALJ then applied plaintiff's age, education, work experience, and RFC for light work to the grid rules, which directed a finding of "not disabled" for him. (R. 27). Fallon asserts that the ALJ erred by failing to incorporate any non-exertional limitations related to his hand tremors and neck pain in his RFC finding, and as a result incorrectly relied on the Medical-Vocational Guidelines in finding him not disabled.

A non-exertional limitation is a limitation imposed by a claimant's impairment(s) and related symptoms, such as pain, that effect a claimant's ability to meet job demands, other than strength demands. 20 C.F.R. § 404.1569 a. Ordinarily, when a claimant suffers from both exertional and non-exertional limitations, an ALJ should not rely solely on the Grid Rules, but use them only as a framework for assessing available work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200 (e)(2); Grant v. Schweiker, 699 F.2d 189,192 (4th Cir. 1989); Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989)(citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)). The Grid Rules are intended for those situations where a claimant is capable of the full range of work in an exertional category. If non-exertional limitations significantly erode the work available in a particular exertional category, reliance on the Grid rules is inappropriate. See Walker, 889 F.2d at 49.

Therefore, the issue in this case is whether the ALJ correctly considered all of the medical evidence of Fallon's non-exertional limitations when determining his RFC, and whether his findings are supported by substantial evidence. The Court finds that the ALJ correctly

reviewed all relevant evidence; reasonably found plaintiff had no non-exertional limitations which would significantly erode the available employment in the light exertional category. Because he concluded plaintiff could perform the full range of light work, the ALJ also correctly relied on the Medical-Vocational Guidelines to find Fallon not disabled during the period under review.

In determining Fallon's RFC, the ALJ had to consider all of his symptoms, including his pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a) and 416.929(a). Fallon testified that he had "burning pain in his neck that radiates into his shoulders and arms." (R. 24). Fallon also stated that he had difficulty reaching due to pain, and that he often dropped objects due to his tremors. Id. Though the ALJ considered Fallon's testimony regarding his limitations, it alone is not enough to establish disability. Id. In considering a claimant's limitations or symptoms, the ALJ must follow a two-step process established under both federal regulations and Fourth Circuit precedent. First, the ALJ must determine if the claimant can show, by objective medical evidence, a physical impairment that could reasonably produce the claimant's symptoms. 20 C.F.R. § 416.929(b); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

After the first step has been satisfied, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms and the extent to which they affect the claimant's ability to work. 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1). The ALJ must consider all of the evidence including medical history, medical signs and laboratory findings, 416.929(a), statements from treating and non-treating sources, all objective medical evidence, medications, and the location, duration, frequency, and intensity of pain or other symptoms. 20 C.F.R. 416.929(c)(3). After carefully considering all evidence, the ALJ found that Fallon's

medically determinable impairments could reasonably be expected to cause his alleged symptoms, but Fallon's statements regarding the intensity, persistence, and limiting effects of these symptoms were not consistent with the record as a whole. (R. 24).

The ALJ must also consider the objective medical evidence in the record, including the medical opinions of a claimant's treating physicians and the non-examining consultants when making the RFC determination. 20 C.F.R. § 416.927(c). Generally, the opinion of a treating physician is accorded more weight than that of a non-examining consultant. Id. Under the federal regulations and Fourth Circuit case law, a treating physician's opinion merits "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. at §§ 416.927(c)(2) and 404.1527(c)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. When the evidence is such that reasonable minds could differ as to whether a claimant is disabled, the ALJ, and ultimately the Commissioner, must resolve any inconsistencies in the evidence. Johnson v. Barnhart, 434 F. 3d 650, 653 (4th Cir. 2005). The ALJ must express "good reasons" for his decision as to the weight accorded to the opinion of a treating source. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). When an ALJ issues a not fully favorable decision to a claimant, the decision must contain

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2P, 1996 WL 374188, at *5 (S.S.A.). The ALJ must indicate the weight given to all considered evidence, otherwise the reviewing court is unable to determine if the ALJ's findings

13

are supported by substantial evidence. Gordon v. Schweiker, 725 F. 2d 231, 235-36 (4th Cir. 1984).

An ALJ must also note whether a claimant's primary care medical source is an "acceptable medical source" for the purpose of determining Social Security Disability and give weight to that source accordingly. Acceptable medical sources include both licensed physicians and osteopathic doctors. C.F.R. 20 § 404.1513 (a)(1). Notably, a nurse practitioner, such as Nurse Gillis, is considered an "other source," and therefore is not an "acceptable medical source." C.F.R. 20 §§ 404.1513 (d) and 416.913(d). This distinction is significant, because only an acceptable medical source can be a "treating source," whose medical opinions can be given controlling weight by an ALJ. C.F.R. 20 §§ 404.1527(d)(2) and 416.927(d)(2). Though a nurse practitioner is not an acceptable medical source, an ALJ can still consider her medical opinion. However, an ALJ should study the facts of each particular case to determine how to evaluate the opinion of a medical source that is not an "acceptable medical source." SSR 06-03P, 2006 WL 2329939, at *5 (S.S.A Aug. 9, 2006) "Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." Id. In fact, it may be appropriate for an ALJ to give more weight to a medical source that is not an "acceptable medical source," than an "acceptable medical source" including a treating physician. Id. Factors that can contribute to this outcome include how often the "other" medical source sees a claimant compared to a treating source, whether he or she provides better supporting evidence and a superior explanation for his or her opinion. Id.

Fallon's primary medical source, Lauren Gillis, ANP, is not an "acceptable medical source," and therefore cannot be a "treating source" whose medical opinion is given controlling weight. Nevertheless, the ALJ reviewed Nurse Gillis's findings in great detail. He notes her

medical source statement in which she opined that Fallon has reduced range of motion in his neck, reduced grip strength, sensory changes in his arms, impaired sleep, abnormal posture, muscle weakness in arms, abnormal gait and tenderness in his neck and back. (R. 25). He also took note of her observations of Fallon's tremors. Id. Nurse Gillis also opined that Fallon was restricted to carrying ten pounds or less, and only occasional balancing, stooping, crouching, bending, crawling, and kneeling. Id.

The Court finds that the ALJ's decision adequately explained the weight given to Nurse Gillis's opinion. The ALJ stated that he was not bound to accept a conclusion about a claimant's disability that is not well supported by "detailed, clinical and/or diagnostic evidence or it is inconsistent with other evidence in the case record." Id. He indicated that he gave "minimal weight" to Nurse Gillis's findings, because the record shows that Fallon only engaged in "minimal, conservative treatment," despite treating with her since July 2009. Id. Because the ALJ adequately and satisfactory explained why Nurse Gillis's opinion was not given controlling weight, he did not err in disregarding her opinion that Fallon had non exertional limitations.

Additionally, the other medical evidence in the record supports the ALJ's finding regarding non-exertional limitations. The record showed Fallon attended six office visits with Nurse Gillis, who made notations regarding his pain level, "limited" range of motion of his neck and back, hand tremors, decreased arm and grip strength, and lumber tenderness. However, once Fallon began noninvasive treatment for his symptoms, which included taking pain medications, he reported decreased feelings of pain. (R. 280, 282, 286). Furthermore, Nurse Gillis's diagnosis of Fallon's tremors was based on observation and Fallon's own description of his symptoms; not laboratory findings. (R. 280-291).

Similarly, consultative examiner Dr. Igelicia examined Fallon in June 2009 and his

findings were mostly unremarkable. (R. 270-74). Though Fallon complained of pain, Dr. Igelicia noted that he was able to ambulate normally, get on and off the exam table, up and out of his chair, and remove his socks and shoes, all without difficulty. Id. Most importantly, during the exam, Fallon exhibited normal motor function, performed a normal finger-to-nose test, and showed normal strength. Id. Dr. Iglecia stated that Fallon had tremors and was unable to reach overhead due to pain, but the ALJ correctly noted these limitations were "not supported by objective evidence and [were] given minimal weight." (R. 25). The ALJ noted that nearly contemporaneous x-rays were essentially normal and Dr. Iglecia's exam revealed normal strength and normal fine motor function. Id. Because the record as a whole did not support Dr. Igelicia's assessment of Fallon's functional limitations, the ALJ's decision to give his opinion minimal weight was reasonable.

Fallon's history of chronic neck and back pain was supported by his examination with Dr. Gonzalez Montoya and Dr. Corrie. Id. The ALJ's decision noted Dr. Gonzalez-Montoya's examination found arthritic changes in Fallon's back, but not surgically correctable lesions. Id. Moreover, though Dr. Gonzalez Montoya observed Fallon's tremor, he opined it was not "parkinsonian" in nature. Id. The ALJ took note that Fallon's recommended post-examination treatment was simply medication changes and a follow up appointment within four to six months. Id. There was also no evidence of any non-exertional limitations present in the record of his exam. (R. 299-304). Fallon's mostly unremarkable examination coupled with Dr. Gonzalez Montoya and Dr. Corrie's conservative treatment plan supported the ALJ's finding that Fallonwas capable of light work and possesses no non-exertional limitations.

In addition, an ALJ is bound by Social Security Ruling 96-6p to consider the State Agency determination before making a RFC finding. SSR 96-6P, 1996 WL 374180, at *1

(S.S.A.). These opinions are to be considered by the ALJ as non-examining expert sources. Id. The weight given to these opinions must be explained in the ALJ's decision. Id.

In the current case, the ALJ properly reviewed the opinion of the Disability Determination Services medical consultant Dr. Moreno. He assigned significant weight to the medical consultant's opinion because it was consistent with the overall evidence of record regarding Fallon's limitations. (R. 25). Though Dr. Moreno stated in his determination that Fallon possessed some exertional limitations; he opined that he still maintained the ability to perform light work. (R. 61). Dr. Moreno found that Fallon displayed an absence of non-exertional limitations, with the exception of a restriction on climbing ladders, ropes, and scaffolds. Id. However, "relatively few jobs in the national economy require ascending or descending ladders and scaffolding." SSR 83-14, 1983 WL 31254, at *2 (S.S.A.)

Fallon contends that since the VE testified that Mr. Fallon had no transferable skills at the sedentary level, taken together with his age, education, and work-experience, he would be considered disabled. In fact, the ALJ observed that Fallon had transferable skills to light level work consistent with his finding that Fallon retained a light level RFC. It does not follow that Fallon would have had no transferable skills at the sedentary level — an inquiry not undertaken due to the ALJ's RFC finding. Nonetheless, the ALJ also found that Fallon had no non-exertional limitations which would significantly erode the light occupation base and was capable of light exertional work. His finding is supported by substantial evidence, and the ALJ adequately explained his reasons for rejecting the contrary opinions in the record.

**C.    A finding of later disability by the Commissioner is not dispostive of the existence of earlier disability.**

Because Fallon was found disabled on a later claim, he also claims remand is required to

evaluate whether his disability began earlier than June 16, 2010. The Commissioner's decision is conclusive if it is supported by substantial evidence. 42 U.S.C. §405(g). A court has the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remand; and may also remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Id. Furthermore, when a claimant files a subsequent application for Social Security Disability:

> [t]he SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability. At each decisionmaking level, the agency recognizes the traditional rule that, absent an identity of claims, principles of claim preclusion (historically referred to as resjudicata) do not apply.

Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 476 (4th Cir. 1999). In this case, Fallon argues he should be awarded benefits, because he was found disabled by the Commissioner by way of a subsequent application a day after being found not disabled by the ALJ's decision.

Simply because Fallon was found disabled on a subsequent application does not prove that the ALJ decision being considered was incorrect or unsupported by substantial evidence. Though there is no published Fourth Circuit precedent on this issue, other courts have held that a subsequent favorable decision on a new application for benefits is not "material" evidence to warrant a remand. The Sixth Circuit has held that a favorable decision on a subsequent application finding the claimant disabled on the day after he was denied by an ALJ for his initial application was not considered to be material evidence for the purpose of remand under 42 U.S.C. §405(g). Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 652-53 (6th Cir. 2009). See also Baker v. Comm'r of Soc. Sec., No. 12-1709 (unpublished) 2013 WL 1866936 (4th Cir. May 6,

18

2013)(citing <u>Allen</u> with approval and noting claimant bears burden to show evidence relied upon in subsequent decision relates to period under review).

Fallon has not met his burden of proof that the evidence used to decide his subsequent favorable application related to the period of disability assessed in this case. To the contrary, his consultative exam with Dr. Karimova took place almost four months after the disability period considered by the ALJ, and contested here. His later visit with Nurse Gillis in October 2010, when he was prescribed a walker, occurred almost seven months after the period documented in the medical evidence of record on this claim. (R. 305-11). As observed by the ALJ, Fallon's medical treatment prior to the period under review here had been conservative. His post-hearing visits demonstrate a deterioration of his conditions occurring after the ALJ's decision. Accordingly, Fallon's later adjudication of disabled does not present any evidence that can be considered "material" to a finding of disabled for the period under review here.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that Fallon's motion for summary judgment be DENIED, that the Commissioner's motion for summary judgment be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed

pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

    2.    A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

July 30th, 2013